Withers, J.,
dissenting. If an 'applicant for discharge *270 under the Insolvent laws has “ disposed of or made over,” money, effects or any kind of estate, “ in trust for himself or otherwise, other than as mentioned in the account of his estate filed by him,” (vide the oath prescribed,) it still remains to be considered whether any disposition set forth in the “ account of his estate,” be fraudulent or not, i. e., whether any disposition he has made, was intended to defeat, delay, hinder or defraud his creditors. Some of his transactions creditors may be able to overthrow — some not. Whether they can do so or not is not the test, but the purpose of the debtor to defraud is. Otherwise, he would have to " mention” his fraudulent transactions among others, in making over and disposing of his effects and estate, and leave his creditor to unravel and overthrow them, if he could. Setting forth the particulars and assigning all his interest, if any he has, is no compliance with the law, if he has fraudulently divested himself of any interest, or meant to do it in order to cheat his creditors.
When such an issue is allowed to be made up, the jury can alone respond to it, and whether a fraud be attempted at a remote period or recently, and what effect that difference in fact may produce, ought to be referred to the jury, and we should have been better satisfied if that course had been taken on this occasion, instead of putting the case on the footing that the interest of Ballard, if any he has, is assigned. The question is, if he has no interest, did he divest himself of it by a fraud ?
We all agree that the distinction laid down on circuit, between the disposition of money won at play, &c., and that arising from the sale of tangible property cannot be maintained. Now, for aught we can know, the jury, guided by the above stated distinction, might have been of opinion, that Ballard’s investments in the negro Tempe and the Providence place, would be fraudulent in effect and design against his creditors, but that the money so invested was derived from gaming and therefore the investment of it was not a legitimate matter *271 of inquiry. How far the lapse of time might operate to control a conclusion of fact, was a proper matter for the jury.
Glover, J., concurred.
Wardlaw, J.
I believe that the distinction which was taken on the circuit, between money acquired without abstraction of any thing that a creditor could take, and money obtained by disposing of property, is, even where the former is confined to acquisitions by gambling, finding and the like, unimportant, in reference to fraud imputed to an applicant for the benefit of our Insolvent Debtors’ Act, except, perhaps that a voluntary conveyance by an insolvent of the proceeds of property disposed of would be prima facie considered fraudulent, whilst some evidence of fraudulent intention would be required as to unexpected windfalls of money spent or invested. This applicant’s purpose in disposing of his money in land and a negro to be settled on his family, should then have been submitted to the jury. A creditor is entitled to an account not only of the visible, tangible property, which a ft. fa. could take, and which only is, perhaps, embraced by the Stat. 13 Eliz., but also of choses in action, and money. The eighth Sect, of our Act of 1759 (4 Stat. 91) excludes from the benefit of the Act, certain enumerated eases, amongst which is the advancement to a child on marriage of more than one hundred pounds, but no other gift to'wife or child. The seventh Sect, of the Act of 1788, (5 Stat. 79) has the words “ fraudulently sold, conveyed or assigned his estate,” which do not naturally include purchases or other disposition' of money, and no words more pertinent to the fraudulent disposition of money are to be found in that Act. Yet the oath in the Act of 1759, and decisions which have been had in this State, may be well held to deny benefit to an applicant, who has invested money with a view to hinder, delay, or defeat creditors.
*272 The ground upon, which, then, I concur in the result of this case, whilst I acknowledge misdirection on the circuit, is this: — If the jury by special verdict had found that the applicant had in 1841, applied money which he had won by gambling to the purchase of the Providence place, and of Tempe, with the purpose of placing the money beyond the reach of creditors — that he was then much in debt, and that debts then subsisting are yet in judgment unsatisfied) although the debt to the plaintiff in this case was not contracted until 1854 — that the Providence place and Tempe yet ■remain unimpaired in value, and the deeds to the wife and children were recorded soon after they were executed — that the schedule mentions both the land and negro, and the applicant is ready to assign his interest in them ; — I would not hold that the benefit of the Act should be denied. I would see that time would have closed the mouths of subsisting creditors, and fair notice those of subsequent ones, or if not, that the applicant had done all that he could do to repair his fault, and direct creditors in pursuit of the property which abides whilst all his other money has been long since misspent, without leaving any thing to represent it, or any ground for the complaint of creditors; — and in the large discretion which I conceive the Act of 1759 entrusts to the Court, I would refuse to hold that the fraud imputed to the applicant — far less censurable perhaps than much of his other conduct — was altogether inexpiable without his performing the impossibility of paying his debts.

Motion dismissed.